

## State of New Jersey
OFFICE OF ADMINISTRATIVE LAW

**ORDER ON MOTION FOR**

**SUMMARY DECISION**

OAL DKT. NO. EDS 07732-24

AGENCY DKT. NO. 2024-37476

**K.C. AND M.C. ON BEHALF OF C.C.,**

    Petitioners,

       v.

**HOLMDEL TOWNSHIP**

**BOARD OF EDUCATION,**

    Respondent.

---

    **K.C. and M.C.**, petitioners, pro se

    **Eric L. Harrison**, Esq., for respondent (Methfessel & Werbel, P.C., attorneys)

BEFORE **JACOB S. GERTSMAN**, ALJ t/a:

### STATEMENT OF THE CASE AND PROCEDURAL HISTORY

This matter comes before this tribunal by a motion for summary decision brought by respondent Holmdel Township Board of Education (Holmdel) arguing that the petitioners' due process petition must be dismissed. On May 6, 2024, petitioners K.C. and M.C., the parents of minor child C.C., filed a due process petition under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1482, and the New Jersey special education regulations, N.J.A.C. 6A:1-1.1 to -10.2, against

OAL DKT. NO. EDS 07732-24

respondent Holmdel.  The parents allege that Holmdel failed to identify C.C., who attended Holmdel's schools from the 2018–2019 school year through the 2021–2022 school year, as a disabled child in need of special education and related services, and thus denied her a free, appropriate public education (FAPE).  As relief, the parents seek tuition reimbursement for the costs of their unilateral placement of C.C. at the Ranney School (Ranney), a private school that is not approved for special education, for the 2022–2023 school year through the 2026–2027 school year.

The parents' petition was transmitted to the Office of Administrative Law, where it was filed on June 7, 2024, as a contested case.  N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -23.  Respondent's motion for summary decision was filed on July 24, 2024, and petitioners' opposition was filed on July 26, 2024.  On July 29, 2024, respondents informed my chambers that they would not be filing a reply brief.  As such, the motion is now ripe for determination.

## **FACTUAL DISCUSSION**

Upon review of the parents' due process petition, the school district's answer to the petition, and the parties' motion paper exhibits, the following facts are not in dispute, and I **SO FIND**:

C.C. was born in 2014 and lives with her parents in Holmdel.  In March 2019, while C.C. attended public school in Holmdel, K.C. and M.C. asked the school district to evaluate C.C. to determine her eligibility for special education and related services due to certain social, behavioral and educational concerns the parents had about C.C.

In May and June 2019, the school district conducted psychological, educational, social and occupational therapy evaluations of C.C. and, based on those evaluations, determined that C.C. did not have a disability adversely affecting her educational performance.

In a June 5, 2019, letter, the school district informed the parents that C.C. was not eligible for special education and related services.  That letter included notice of the

2

parents' right to appeal the school district's eligibility determination.  The parents did not appeal that determination by requesting mediation or a due process hearing through the Office of Special Education.

In subsequent school years, the parents' interactions with the school district mainly involved parental concerns about other children or teachers bullying C.C. and masking and social distancing requirements during the COVID-19 pandemic.  With respect to the latter issue, the parents obtained in October 2021 a medical exemption from the mask mandate for C.C. but complained that, as a result, the school district mistreated maskless C.C. by forcing her to sit in the back of the classroom.

For the 2019–2020, 2020–2021 and 2021–2022 school years, C.C. mostly received "Satisfactory" and "Outstanding" marks on her progress reports.  In May 2022, however, the parents expressed concerns about C.C.'s educational performance in correspondence with the principal of C.C.'s school, Lisa Vitale (Vitale), and C.C.'s second-grade teacher, Alicia Del Buono (Del Buono).  Specifically, in a May 26, 2022, email, K.C. wrote to Vitale that C.C. "has been scoring terribly on every assignment she brings home" and that "[h]er MAP [Measures of Academic Performance Test] scores are also terrible."  According to K.C., "she does not appear to be learning," and "something seems to be very wrong."  She wondered if C.C. "is not focusing on her academics despite her teacher's efforts, and this would be something we need to address at home," and asked if the principal could "investigate."

K.C. worried that C.C. "will need to repeat 2nd grade if she stays" at the school and informed Vitale that "[w]e have submitted an application at Ranney and will transfer her out of the school district if Holmdel cannot openly discuss this matter and ultimately meet her academic needs."

In response, Vitale wrote:

> Thank you for your email and I can completely understand your concerns.  I will investigate and speak to her teachers and definitely get back to you with some information next week.  I am aware that test scores in MAP have dipped a bit

OAL DKT. NO. EDS 07732-24

> this year and I am sure that is due to multiple causes, COVID, new F&P reading series, etc. Let me do some investigating and I will most certainly provide you with whatever information I can uncover.

Vitale discussed K.C.'s concerns with Del Buono who, on May 31, 2022, wrote K.C. a lengthy email about C.C.'s academic performance. In that email, Del Buono highlighted C.C.'s strengths and weaknesses in reading, spelling, and math. The teacher addressed C.C.'s MAP test scores from the Fall but did not appear to address her most recent test scores in January. The teacher noted that C.C.'s "biggest struggle is foundational literacy concepts in phonics, which negatively impact her writing and reading." Del Buono recommended summer school for C.C. as a way "to meet [her] needs."

On June 1, 2022, K.C. emailed Vitale and Del Buono about her concerns over C.C.'s decline in MAP test scores, ability to identify high-frequency words and math skills. In that email, K.C. also criticized the school district's COVID-19 policies and bemoaned C.C.'s classroom struggles during the pandemic.

The same day, Vitale emailed K.C. to tell her "I am so sorry to hear that [C.C.] suffered so much emotionally this year" and that "COVID has been extremely stressful for everyone and we continue to still see the after effects of all of it." She asked K.C. "to let us know if there is anything else we can do on our end to assist [C.C.] with her transition to 3rd grade."

In early June, the school offered, and K.C. accepted, C.C.'s placement in the school district's "Summer Step Up Program" for July and August 2022. On June 9, 2022, however, K.C. asked Del Buono for a letter of recommendation in support of C.C.'s application to Ranney, and later that month Del Buono provided K.C. with that letter. Then, on July 13, 2022, the parents signed an enrollment/tuition agreement for C.C. to attend Ranney for the 2022–2023 school year and provided Ranney with a down payment on tuition.

OAL DKT. NO. EDS 07732-24

By email dated August 22, 2022, the parents notified Holmdel's school board members that C.C. had enrolled at Ranney for the 2022–2023 school year and asked for her school records to be sent to Ranney. Other than September and October 2023 correspondence about the school district's provision of transportation to and from Ranney, the parents and Holmdel did not interact or correspond during the 2022–2023 school year.

In July 2023, the parents privately arranged for C.C. to undergo a psychological/educational evaluation that resulted in a "Visual Processing Disorder" diagnosis for C.C. In December 2023, the Monmouth-Ocean Educational Services Commission (MOESC) issued an Individualized Service Plan (ISP) for C.C. at Ranney. C.C. was classified as "Other Health Impaired," and the ISP provided for certain special education and related services, including modifications and supplementary aid and services. And in February 2024, C.C. underwent a central auditory processing evaluation that revealed certain auditory processing difficulties.

On April 23, 2024, the parents wrote to Holmdel to request tuition reimbursement for C.C.'s attendance at Ranney for the 2022–2023 school year and the four school years thereafter due to Holmdel's alleged failure to identify and classify C.C. as a special education student and to provide her with a FAPE.

## POSITIONS OF THE PARTIES

*The parents' May 2024 due process petition*

On or about May 6, 2024, the parents filed with the Office of Special Education a due process petition that includes numerous allegations regarding Holmdel's failure to identify, classify and educate C.C. under the IDEA. The petition includes claims that Holmdel "failed to identify [C.C.'s] unique learning requirements, and after an incomplete assessment, incorrectly determined ineligibility for an IEP [Individualized Education Plan] in 2019"; that the parents were "not provided with a copy of PRISE [Parental Rights in Special Education], to their recollection"; that C.C. was improperly "placed in the back of every classroom in the beginning of [the 2021–2022 school year]

due to a medical mask exemption despite a visual disorder that impairs her ability to learn" and resulted in behavioral and social problems for C.C.; and that the parents notified Holmdel on May 26, 2022, of "their intent to unenroll their daughter from the district due to her inconsistent performance" and Holmdel's "failure to take proper care in the appropriate identification of the student's eligibility for an IEP, and subsequent failure to prioritize through assessment and timely intervention," and their intent to place C.C. at Ranney "as a means of appropriate intervention to address" C.C.'s "escalating anxiety/insecurity," social withdrawal, "poor/declining academic performance" and "lack of desire to participate in learning."

According to the petition, C.C. has been diagnosed with visual and auditory processing disorders and, while at Ranney, C.C. has received "a highly individualized curriculum, as well as multiple types of accommodation," and her "learning environment is appropriate and able to provide her with the skills and knowledge necessary to succeed."

As a result of Holmdel's alleged failures, the parents seek $190,000 in tuition reimbursement for C.C.'s attendance at Ranney for the 2022–2023 school year through the 2026–2027 school year.

On May 14, 2024, Holmdel answered the parents' due process petition. Holmdel asserts that the school district "conducted appropriate psychological, educational, and social history evaluations in May and June of 2019, which showed that C.C. did not have a disability that adversely affected her educational performance."

While Holmdel concedes that "C.C. may now qualify for either an IEP or a 504 Plan," the school district asserts that its 2019 evaluations were appropriate, and the fact "[t]hat subsequent evaluations indicative of a disability three years later may suggest otherwise does not bespeak a violation of the District's 'child find' obligations under the IDEA," and "no reimbursement for C.C.'s attendance at the Ranney School is warranted."

Holmdel concluded its answer by stating that, "[o]f course, as previously stated to the petitioners, the District would be happy to schedule an evaluation/planning meeting with C.C.'s parents so that C.C. may be further evaluated to determine if she is eligible for special education and related services, or if she would alternatively qualify for a 504 Plan."

*Respondent's Motion for Summary Decision*

On July 23, 2024, Holmdel filed a motion for summary decision seeking the dismissal of the parents' due process petition because (1) the IDEA's two-year statute of limitations for filing due process complaints bars their claims that Holmdel improperly determined in 2019 that C.C. was ineligible for special education; (2) the parents neglected to comply with the conditions for tuition reimbursement under N.J.A.C. 6A:14-2.10 when they withdrew C.C. from Holmdel in July 2022 and unilaterally placed her at Ranney for the 2022–2023 school year and beyond and (3) the parents' claim for future tuition reimbursement for C.C.'s attendance at Ranney for the 2024–2025, 2025–2026, and 2026–2027 school years is improperly premature and hypothetical.

In opposition, the parents maintain that summary decision in Holmdel's favor is inappropriate because there are genuine issues of material fact regarding Holmdel's failure to comply with its child-find and FAPE obligations to C.C.  According to the parents, Holmdel conducted inappropriate evaluations of C.C. in 2019 and again failed to identify C.C. as a special education student in 2022.

The parents assert that "[t]hroughout the 2022–2023 school year, [we] encountered difficulties in deciding whether to pursue an expensive independent evaluation due to assurance from the District that C.C. did not qualify for an [IEP] or Section 504 Plan" and that "[i]n May of 2023, [we] began to question the accuracy of the District's initial evaluation and any related procedural violations" and thereafter arranged for C.C. to undergo various evaluations that revealed visual and auditory deficiencies affecting her ability to learn.

7

The parents will not consent to any further evaluations by Holmdel and contend that C.C. has thrived at Ranney and that, due to Holmdel's past IDEA violations, Holmdel must reimburse the parents for past and future tuition costs for C.C.'s attendance at Ranney.

## LEGAL ANALYSIS AND CONCLUSION

### I.    The standards for summary decision

Under N.J.A.C. 1:1-12.5(a), "[a] party may move for summary decision upon all or any of the substantive issues in a contested case."  A motion for summary decision may be granted "if the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law."  N.J.A.C. 1:1-12.5(b).

### II.    The IDEA and state special education law

The IDEA is designed to assure that disabled children may access a FAPE that is tailored to their specific needs.  20 U.S.C. § 1400(c).  Under the IDEA and the New Jersey laws implementing the IDEA, each district board of education is responsible for "the location, identification, evaluation, determination of eligibility, development of an IEP and the provision of a [FAPE] to students with disabilities" who reside in the district.[1] N.J.A.C. 6A:14-1.1(d); N.J.A.C. 6A:14-1.3; 20 U.S.C. § 1412(a)(3)(A).

*Child Find and FAPE*

In J.M. v. Summit City Board of Education, 39 F.4th 126 (3d Cir. 2022), the Third Circuit Court of Appeals delineated the scope of these school district duties and the legal claims a parent may pursue if a school district shirks its duties.  As the Court

---

[1]  An IEP is a written statement that explains how a FAPE will be provided to the child.  20 U.S.C. § 1414(d)(1)(A)(i).  The IEP must contain such information as a specific statement of the student's current performance levels, the student's short-term and long-term goals, the proposed educational services, and criteria for evaluating the student's progress.  20 U.S.C. § 1414(d)(1)(A)(i)(I)–(VII).

explained, "the IDEA places two significant responsibilities on school districts with respect to children with disabilities: the child-find obligation and the duty to provide a free appropriate public education, commonly referred to as a 'FAPE,' to children with disabilities." Id. at 137 (citing D.K. v. Abington Sch. Dist., 696 F.3d 233, 244 (3d Cir. 2012)).

First, "[t]he child-find obligation requires school districts to 'identif[y], locate[], and evaluate[]' all 'children with disabilities . . . who are in need of special education and related services.'" Ibid. (citing 20 U.S.C. § 1412(a)(3)(A)). In this way, "[a] school district has a duty to evaluate a child for a disability upon notice of behavior that is likely to indicate a disability." Ibid. (internal quotation omitted). And "[o]nce a school district has such a reasonable suspicion that a child has a disability, it has a reasonable time to evaluate 'the specific problems a potentially disabled student is having.'" Ibid. (quoting D.K., 696 F.3d at 250; citing Ridley Sch. Dist. v. M.R., 680 F.3d 260, 271 (3d Cir. 2012)).

In connection with the child-find obligation, "[t]he IDEA also imposes specific requirements for evaluating a child who is reasonably suspected of having a disability" such that "a school district must assess the child 'in all areas of suspected disability,' 20 U.S.C. § 1414(b)(3)(B), but that does not require the evaluation to be 'designed to identify and diagnose every possible disability[.]'" Ibid. (quoting D.K., 696 F.3d at 250). In addition, "a school district's assessment must seek to gain 'relevant information' about the 'educational needs of the child' to determine if the child needs special education and related services." Ibid. (quoting 20 U.S.C. § 1414(b)(3)(C)). And "[i]f a school district meets these statutory requirements for identifying, locating, and evaluating a child with disabilities, then it discharges its child-find obligation." Id. at 138.

Second, "[a]fter identifying a child with a disability who is also in need of education and related services, a school district is obligated to provide a FAPE to the disabled child." Ibid. (citing 20 U.S.C. § 1412(a)(1)(A); 20 U.S.C. § 1401(3)). Thus, "[t]ogether, the child-find duty and the FAPE obligation require public schools to 'identify and effectively educate' disabled children." Ibid. (quoting P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 735 (3d Cir. 2009)).

Importantly, "[t]he IDEA creates a cause of action against a school district that fails to provide a FAPE to a child who has a disability and needs special education and related services." Ibid. (citing 20 U.S.C. § 1412(a)(1)(A); 20 U.S.C. § 1415(f)(3)(E)(i)–(ii), (i)(2)). And "[d]ue to the relationship between the child-find obligation and the duty to provide a FAPE, a denial-of-FAPE claim may be premised on a child-find violation." Ibid.

The Court explained in J.M. that there are three parts to this claim:

> First, the child must have a disability for which he or she needs special education and related services. *See* 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A). Second, the school district must breach its child-find duty. *See* 20 U.S.C. § 1412(a)(3)(A); P.P., 585 F.3d at 738; Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 750 (2d Cir. 2018). Third, the school district's child-find breach must impede the child's right to a FAPE, or, alternatively, the child-find breach must either "significantly impede[]" parental participation rights or "cause[] a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii)(I)-(III).

[Ibid.]

### *Due Process Complaints and the Statute of Limitations*

In New Jersey, of course, parents may pursue child-find, FAPE, and other IDEA-related claims at a due process hearing before an Administrative Law Judge (ALJ). N.J.A.C. 6A:14-2.7(a). Due process complaints are, however, subject to a two-year statute of limitations, such that "[a] request for a due process hearing shall be filed within two years of the date the party knew, or should have known, about the alleged action that forms the basis for the due process petition." N.J.A.C. 6A:14-2.7(a)(1). But "[t]he two-year period for filing for a due process hearing may be extended by an administrative law judge if: i. A district board of education specifically misrepresented to the parent that the subject matter of the dispute was resolved to the parent's satisfaction; or ii. The district board of education withheld information that was required by law to be provided to the parent." Ibid.

10

*Unilateral Placement and Tuition Reimbursement*

Generally, a school board "shall not be required to pay for the cost of education, including special education and related services, of a student with a disability if the district board of education made available a free, appropriate public education and the parents elected to enroll the student in a nonpublic school . . . or an approved private school for students with disabilities."  N.J.A.C. 6A:14-2.10(a).

But if parents enroll their disabled child "in a nonpublic school . . . without the consent of, or referral by, the district board of education," also known as a unilateral or parental placement, "an [ALJ] may require the district board of education to reimburse the parents for the cost of enrollment if . . . the district board of education had not made a [FAPE] available to the student in a timely manner prior to enrollment and . . . the private placement is appropriate."  N.J.A.C. 6A:14-2.10(b).

Even so, tuition reimbursement may be reduced or denied if the parents failed to provide the school district with notice of their intent to enroll their child in a private school within at least ten business days or upon a finding by the ALJ that the parents otherwise acted unreasonably in unilaterally placing their child in a private school. N.J.A.C. 6A:14-2.10(c).[2]

**The parents' claims regarding Holmdel's 2019 evaluations**

As noted above, parents must file a due process complaint "within two years of the date [the parents] knew, or should have known, about the alleged action that forms the basis for the due process petition," unless the school district prevented the parents from timely filing their petition through misrepresentation or misinformation.

---

[2]  N.J.A.C. 6A:14-2.10 also provides that "[a] parental placement may be found to be appropriate by a court of competent jurisdiction or an administrative law judge pursuant to N.J.A.C. 6A:14-6.5 for placements in unapproved schools, even if the parental placement does not meet the standards that apply to the education provided by the district board of education."  N.J.A.C. 6A:14-2.10(b)(1).  As Holmdel notes, Ranney is not approved specifically for the education of disabled children.

OAL DKT. NO. EDS 07732-24

Here, I **CONCLUDE** that the parents' 2019 claims must be dismissed as untimely because the parents filed this due process petition in May 2024, nearly five years after they knew or should have known about their disagreement with Holmdel's evaluations and eligibility determination in June 2019. Moreover, while the parents assert that in 2019 they were "not provided with a copy of PRISE, to their recollection," Holmdel's June 5, 2019, letter informing the parents of the eligibility determination clearly included notice of the parents' right to appeal the school district's eligibility determination.

As such, I **CONCLUDE** that there is no basis to toll the two-year statute of limitations, there are no genuine issues with respect to the parents' failure to timely file their 2019 claims, and Holmdel is entitled to prevail as a matter of law on the 2019 claims regarding child find and FAPE. Accordingly, I **CONCLUDE** that Holmdel is entitled to summary decision dismissing the parents' child-find claim regarding Holmdel's 2019 evaluations and determination that C.C. was ineligible for special education.

**The parents claim for tuition reimbursement for the 2023–2024 school year.**

The moving papers show that after the parents withdrew C.C. from the school district and unilaterally placed her at Ranney for the 2022–2023 school year, the parents did not communicate with Holmdel during the 2022–2023 school year or prior to the 2023–2024 school year about their intent to reenroll C.C. in the school district and seek special education services from Holmdel. I **CONCLUDE** that this lack of notice or communication is fatal to the parents' claim for tuition reimbursement for the 2023–2024 school year.

While a school district is responsible for providing a special education to all eligible children who reside in the district, including private school students, "[w]here . . . a parent unilaterally places the child in a private school, the student does not have a right to all the services the public school would provide, nor must the public school continue to prepare an IEP for that child each year." A.B. v. Abington Sch. Dist., 841 Fed. Appx. 392 (3d Cir. 2021) (citing 20 U.S.C. § 1412(a)(10)(A)(i); 34 C.F.R. § 300.137(a); M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th

Cir. 2002)).  Rather, "to trigger a public school district's responsibilities under IDEA, a parent who enrolls a child in a private school must request an evaluation or begin the public school enrollment process." Ibid.

Thus, "[w]hile a parent need not affirmatively enroll their child in public school to receive an offer of a FAPE, she must either manifest an intent to enroll the child or request an evaluation." Ibid. (citing James ex rel. James v. Upper Arlington City Sch. Dist., 228 F.3d 764, 768 (6th Cir. 2000); Durbrow v. Cobb Cnty. Sch. Dist., 887 F.3d 1182, 1192–93 (11th Cir. 2018)).  Absent that, parents will not be entitled to tuition reimbursement for the continued placement of their child in a private school. Ibid.

Here, the parents failed to notify Holmdel of their intent to reenroll C.C. in the school district and failed to request an evaluation by Holmdel prior to the start of the 2023–2024 school year.  In fact, after the parents withdrew C.C. from the school district in 2022, they did not communicate with Holmdel about C.C.'s education until April 2024 when, in anticipation of filing this due process petition, the parents requested tuition reimbursement for C.C.'s attendance at Ranney for multiple school years.  Indeed, rather than reach out to Holmdel about reenrollment or an evaluation prior to the 2023–2024 school year, the parents sought private evaluations, the results of which they did not share with Holmdel except in connection with their petition.

Under N.J.A.C. 6A:14-2.10(b), an ALJ "may require the district board of education to reimburse the parents for the cost of enrollment if the administrative law judge finds that the district board of education had not made a free, appropriate public education available to the student in a timely manner prior to enrollment and . . . the private placement is appropriate."  With respect to the 2023–2024 school year, I **CONCLUDE** that the parents have failed to meet the first condition for tuition reimbursement by showing that Holmdel failed to make a FAPE available to C.C. prior to the 2023–2024 school year.  Holmdel could not be expected to offer a FAPE without notice of the parents' intent to reenroll her in the district or without a parental request for an evaluation or other special education services.  Accordingly, I **CONCLUDE** that Holmdel is entitled to summary decision with respect to the parents' claim for tuition

13

reimbursement for the 2023–2024 school year.  As such, I **CONCLUDE** that their claim for tuition reimbursement for the 2023–2024 school year must be dismissed.

## The parents' tuition reimbursement claims for the 2024–2025, 2025–2026, and 2026–2027 school years

While the parents claim that Holmdel is unable to provide C.C. with a FAPE, Holmdel rightly notes that the parents have prevented the school district from assessing whether C.C. is eligible for special education due to their "refusal to re-enroll C.C., make her available for evaluation, and to allow for the develop[ment] of a proposed IEP if warranted[.]"  Indeed, Holmdel has informed the parents that the school district "would be happy to schedule an evaluation/planning meeting with C.C.'s parents so that C.C. may be further evaluated to determine if she is eligible for special education and related services, or if she would alternatively qualify for a 504 Plan."

Holmdel persuasively argues in its motion brief that "[t]he absence of a substantive challenge to a current or prospective program is fatal to [the parents'] demand for payment of tuition" at Ranney for future school years because "[a]ny dispute relating to a program proposed for the 2024–2025, 2025–2026, and 2026–2027 school year[s] is hypothetical and premature."  I **CONCLUDE** that at present, there is no basis for the parents' claims for tuition reimbursement for the 2024–2025 school year or other future school years.  Accordingly, I **CONCLUDE** that Holmdel is entitled to summary decision with respect to the parents' claims for those future school years, which are not appropriately part of the parents' May 2024 due process petition, and which therefore must be dismissed.

## The parents' claim for tuition reimbursement for the 2022–2023 school year

In <u>J.M.</u>, the Third Circuit noted that, with respect to a school district's child-find obligations, "[t]he IDEA . . . imposes specific requirements for evaluating a child who is reasonably suspected of having a disability" such that "a school district must assess the child 'in all areas of suspected disability,'" that "[t]he IDEA creates a cause of action against a school district that fails to provide a FAPE to a child who has a disability and

OAL DKT. NO. EDS 07732-24

needs special education and related services," and that "[d]ue to the relationship between the child-find obligation and the duty to provide a FAPE, a denial-of-FAPE claim may be premised on a child-find violation."

Here, I **CONCLUDE** that there is a genuine issue of material fact whether Holmdel neglected its child-find and FAPE duties in 2022, such that summary decision is not appropriate with regard to the parents' tuition reimbursement claim for the 2022–2023 school year. The moving papers reflect that on May 26, 2022, K.C. contacted Vitale about her concerns with C.C.'s educational performance. In particular, K.C. expressed that C.C. "has been scoring terribly on every assignment she brings home" and that "[h]er MAP scores are also terrible." According to K.C., "she does not appear to be learning" and "something seems to be very wrong." She wondered if C.C. "is not focusing on her academics despite her teacher's efforts, and this would be something we need to address at home," and asked if the principal could "investigate."

In response, Vitale asked C.C.'s teacher, Del Buono, to address K.C.'s concerns. Del Buono reported several positive developments in C.C.'s academic performance during the 2021–2022 school year. The teacher did note, however, that C.C.'s "biggest struggle is foundational literacy concepts in phonics, which negatively impact her writing and reading." And Del Buono recommended summer school for C.C. as a way "to meet [her] needs."

I **CONCLUDE** that the correspondence between K.C. and school personnel in May and June 2022 is sufficient to raise a genuine issue of material fact whether Holmdel failed to then identify and evaluate C.C. for special education purposes. In this regard, I **CONCLUDE** that a hearing with fact and/or expert witnesses and other evidence is necessary to determine whether Holmdel neglected its child-find duties in May and June 2022 and, if so, whether Holmdel denied C.C. a FAPE and whether, and to what extent, the parents are entitled to tuition reimbursement for their unilateral placement of C.C. at Ranney for the 2022–2023 school year under N.J.A.C. 6A:14-2.10. It must also be noted that the May and June 2022 correspondence cannot be viewed in a vacuum, and there are other material facts that occurred both before and after that correspondence that could also affect the outcome of the parents' claims. All of those

OAL DKT. NO. EDS 07732-24

facts may be appropriately considered at a hearing. Accordingly, I **CONCLUDE** that Holmdel is not entitled to summary decision with respect to the parents' claims for tuition reimbursement for the 2022–2023 school year.

## ORDER

Based on the foregoing, it is hereby **ORDERED** that:

1. Respondent's motion for summary decision with respect to the parents' claims regarding Holmdel's 2019 evaluations is **GRANTED**. Those claims are hereby **DISMISSED**.

2. Respondent's motion for summary decision with respect to the parents' claim for tuition reimbursement for the 2023–2024 school year is **GRANTED**. This claim is hereby **DISMISSED**.

3. Respondent's motion for summary decision with respect to the parents' tuition reimbursement claims for the 2024–2025, 2025–2026, and 2026–2027 school years is **GRANTED**. These claims are hereby **DISMISSED**.

4. Respondent's motion for summary decision with respect to the parents' claim for tuition reimbursement for the 2022–2023 school year is **DENIED.**

It is **FURTHER ORDERED** that the parties shall appear for the hearing for the remaining claim on **September 16 and 24, 2024, at 9:30 a.m.**, formal notice of which was issued to the parties on July 18, 2024.

August 22, 2024
DATE

_____
**JACOB S. GERTSMAN**, ALJ t/a

JSG/sw/cab

16

OAL DKT. NO. EDS 07732-24

## APPENDIX

Respondents Motion for Summary Decision with Exhibits Dated July 24, 2024

Petitioner's Opposition with Exhibits Dated July 25, 2024